## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BLIMIE SCHWARTZ, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ENHANCED RECOVERY COMPANY, LLC<br><br>　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 1:15-cv-01518-CBA-SMG |

---

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

**Smith, Gambrell & Russell, LLP**

Scott S. Gallagher
Bank of America Tower
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6111
Facsimile:  (904) 598-6211
Email:  sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*
and

John McCarthy
Smith, Gambrell & Russell, LLP
1301 Avenue of the Americas
21st Floor
New York, NY 10019
Telephone: (212) 907-9700
Facsimile: (212) 907-9800
Email: jmccarthy@sgrlaw.co

Counsel for Defendant

## <u>TABLE OF CONTENTS</u>

I.  Introduction................................................................................................1

    A.  Issues presented in this Motion................................................1

    B.  Legal Standard ........................................................................2

II.  The inclusion of the statutorily-required 1692g validation notice in
two sequential letters to a consumer does not violate the FDCPA ........................3

    A.  Plaintiff's Letter Claim is based solely on the allegation that
ERC sent her two letters bearing the statutory language
required by section 1692g of the FDCPA ....................................3

    B.  Section 1692 of the FDCPA requires collectors to provide a
30-day validation period and to give notice to consumers of
those rights – the Amended Complaint includes no allegations
that ERC failed to comply with these requirements ............................4

    C.  Providing a consumer with additional time to dispute or seek
validation of a debt is not false, deceptive, or misleading under
the FDCPA...................................................................................7

    D.  Plaintiff's theory contravenes the clear, stated policy and
legislative intent of the FDCPA: encouraging greater protections
for consumers .........................................................................13

III.  Plaintiff's new and distinct claim concerning the reference to a
Website soliciting the payment of a convenience fee is barred by the
FDCPA's limitations period, as a matter of law ..................................15

    A.  The new claim asserted in the Amended Complaint is premised
on the reference to ERC's website in each of the letters sent to
Plaintiff and on section 1692f(1) ............................................16

    B.  Schwartz's allegations establish that, as a matter of law, the
FDCPA's one year statute of limitations has run on the new
Claim asserted in the Amended Complaint ..............................17

    C.  The new claim in the Amended Complaint does not relate back
to the date of the filing of the initial Complaint......................18

    D.  Plaintiff's new claim accrued when the March 11, 2014 letter
was sent to Plaintiff; thus, the new claim is time-barred,
regardless of whether it relates back under Rule 15, Fed.R.Civ.P...........21

IV.     Conclusion .........................................................................................................22

SGR/13203335.3

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Arend v. Total Recovery Servs., Inc.*, No. 05-cv-3064 (DLI)(JMA),
    2006 WL 2064977 (E.D.N.Y. July 24, 2006) ........................................................ 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 2, 3

*Avila v. Riexinger & Assocs., LLC*, Nos. 13 CV 4349 (RJD)(LB),
    14 CV 2740 (RJD)(LB), 2015 WL 1731542 (E.D.N.Y. Apr. 14, 2015) ......................... passim

*Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)* ...................................................... 2

*Brenker v. Creditors Interchange, Inc.*, No. 03 Civ.6500 LTS DFE,
    2004 WL 594502 (S.D.N.Y. Mar. 25, 2004) .................................................................. 8

*Castro v. Green Tree Serv. LLC*, 959 F. Supp. 2d 698 (S.D.N.Y. 2013) .................................. 10

*Christopher v. RJM Acquisitions, LLC*, No. CV-13-2274-PHX-JAT,
    2015 WL 437541 (D. Ariz. Feb. 3, 2015) ..................................................................... 12

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ................................... 3, 4

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) .............................................. 2

*DiRosa v. N. Shore Agency, Inc.*, 56 F. Supp. 2d 1039 (N.D. Ill. 1999) ................................ 8, 9

*Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013) ............................ 10

*Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed. Appx. 89 (2d Cir. 2012) ............................ 10

*Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381 (S.D. Fla. 2014) ................................ 8, 10

*Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381 ............................................... 10, 15

*Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir. 1989) ...................................... 16

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ........................................................ 3

*Gordon v. Nat. Youth Work All.*, 675 F.2d 356 (D.C. Cir. 1982) ........................................ 16

*Grace v. Rosenstock*, 169 F.R.D. 473 (E.D.N.Y. 1996) .................................................... 18

*Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2d Cir. 2005) ............................ 3, 7, 12

iii

*Jacobsen v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008)............................................ 6

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ................................................................ 13

*Mattson v. West Commc'ns, Inc.*, 967 F.2d 259 (8th Cir. 1992)................................................ 17

*Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482 (4th Cir. 1991) ...................................... 6

*Paige v. Waukesha Health Sys.*, No. 12-C-601,
   2013 WL 3560944 (E.D. Wis. July 11, 2013) ......................................................... 10

*Romea v. Heiberger & Assocs.*, 163 F.3d 111 (2d Cir. 1998) ..................................................... 13

*See Russell v. Equifax ARS*, 74 F.3d 30 (2d Cir. 1996) ...................................................... 6

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) ................................................................... 3, 4

*Victori v. Accelerated Bureau of Collections of Ohio, Inc.*,
   No. 96-cv-0263E (SC), 1997 WL 9788 ............................................................. 18, 19

*Wade v. Rosenthal, Stein & Assocs., LLC*, No. 11-C5672,
   2012 WL 3764291, at *2 (E.D.N.Y Aug. 29, 2012)........................................................ 18, 19

*Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000) .......................................................... 3

*Wright v. Zabarkes*, 347 Fed. Appx. 670 (2d Cir. 2009) ....................................................... 17

*Young v. G.L.A. Collection Co.*, No. 1:11-cv-489-WTL-MJD,
   2011 WL 60166550 (S.D. Ind. Dec. 1, 2011)................................................................ 9, 11

## Statutes

15 U.S.C.A. § 1692g (2014) ............................................................................ 1, 3, 5
15 U.S.C.A. § 1692e (2014) ............................................................................ 5, 7
15 U.S.C.A. § 1692k (d) ................................................................................. 15
15 U.S.C.A. § 1692n ..................................................................................... 14

## Other Authorities

S. Rep. No. 95-382, at 4 (1977) *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699)............................ 6

iv

## **Rules**

Rule 10(c), F. R. Civ. P....................................................................................................... 3

Rule 12 (b)(6), Fed. R. Civ. P ............................................................................................ 2

Rule 15 (c)(1)(B), Fed. R. Civ. P....................................................................................... 18

SGR/13203335.3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BLIMIE SCHWARTZ, on behalf of herself and all others similarly situated, | : : : | Civil Action No. 1:15-cv-01518-CBA-SMG |
| Plaintiff, | : : : | |
| v. | : : | |
| ENHANCED RECOVERY COMPANY, LLC | : : : | |
| Defendant. | : : : | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### I.   Introduction

Pursuant to Local Rule 7.1 (a)(2), Defendant, Enhanced Recovery Company, LLC ("ERC") submits the following memorandum of law in support of the Motion to Dismiss.

### A.  Issues presented in this Motion.

In the Amended Complaint, Plaintiff Blimie Schwartz ("Schwartz") asserts two distinct alleged violations of the Fair Debt Collection Practices Act ("FDCPA") by ERC and seeks to represent separate classes of persons corresponding to the two distinct claims. ERC's Motion to Dismiss presents two issues for this Court's consideration:

1.     Federal law prohibits conduct that impedes or "overshadows" a consumer's rights under section 1692g of the FDCPA to dispute the validity of a debt within 30 days after receiving the initial communication from the debt collector, and prohibits false, deceptive or misleading statements. Here, ERC sent two letters to Schwartz, each of which contained language—expressly required by section 1692g—notifying Plaintiff of her ability to dispute the

debt, and granting the consumer thirty days in which to respond. Plaintiff contends the inclusion of the notice in the second letter violated the FDCPA.  To the contrary, the facts alleged do not support a claim under the FDCPA because the second letter did not overshadow Plaintiff's validation rights, nor was the letter false, deceptive or misleading, as a matter of law.

2.      In her Amended Complaint, Plaintiff asserts a new and distinct alleged violation of the FDCPA.  Specifically, she alleges the two letters she received from ERC contain a reference to a web site requesting payment of a fee she contends violates section 1692f (1) and other sections of the FDCPA.  The new claim asserted in the Amended Complaint is barred by the FDCPA's limitations period because the new claim does not relate back to the date of the filing of the initial Complaint and, in any event, because the new claim accrued on the date of the first letter sent to Plaintiff, as specifically alleged in the Amended Complaint.

For the reasons set forth in more detail below, this Court can, and should, dismiss the Amended Complaint, with prejudice, for failure to state a claim for relief.

**B.  Legal Standard**

A complaint is subject to dismissal under Rule 12 (b)(6), Fed. R. Civ. P. if it does not contain more than mere labels or conclusory statements as to its claim; a formulaic recitation of the elements of the pled cause of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the court is "constrained to accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor" it is also constrained "to ascertain that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions may only provide the

SGR/13203335.3

framework of the complaint; they must be supported by well-pleaded factual allegations. *Iqbal*, 556 U.S. at 679.

Under Second Circuit case law, FDCPA claims premised solely on written communications are properly disposed of on the pleadings. *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2d Cir. 2005).  Under Rule 10(c), Federal Rules of Civil Procedure, the exhibits to a complaint are properly considered as part of the complaint for purposes of a motion under Rule 12 (b)(6).  *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985). Even where letters are not attached as exhibits, they can be incorporated by reference where they are referred to in the pleadings. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (*citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

A trial court may determine, as a matter of law, at the pleadings stage that there is no claim under the FDCPA based on the language in a letter to the consumer. *Greco*, 412 F.3d at 366. This comports with the view espoused by other Circuit Courts of Appeal as well.  *See, e.g.*, *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000) (holding that whether a letter violated the FDCPA's prohibition on contradictory or overshadowing language was a question of law to be reviewed *de novo* and affirmed the trial court's dismissal of the claim).

## II.   The inclusion of the statutorily-required 1692g validation notice in two sequential letters to a consumer does not violate the FDCPA.

### A. Plaintiff's Letter Claim is based solely on the allegation that ERC sent her two letters bearing the statutory language required by section 1692g of the FDCPA.

Plaintiff, Blimie Schwartz, filed this putative class action against ERC on March 23, 2015 and filed the Amended Complaint (Dkt. 17) on July 9, 2015. Both the initial and amended complaints allege ERC violated the FDCPA with respect to Schwartz and a class of similarly situated persons by sending two letters, both containing the notices required by section 1692g of

3

the FDCPA (the "Letter Claim"). Plaintiff contends these actions violate the FDCPA's prohibition on false or deceptive statements.

The alleged facts supporting Schwartz's claim are simple. On or about March 11, 2014, ERC sent Schwartz a letter that "provided a notice of Plaintiff's rights as required under 15 U.S.C. § 1692g (a)." Dkt. 17 at ¶¶ 10-12. Then on April 18, 2014, ERC sent Schwartz a second letter stating she "had an additional thirty days from the date of that subsequent letter to dispute the debt or request verification." *Id.* at ¶¶ 14-15.[1] No other facts are alleged to support the Letter Claim, for which Schwartz seeks to represent Class A. *Id.* at ¶ 62.

Although the factual assertions relating to the Letter Claim are quite simple, the legal reasoning is not so straightforward. Plaintiff alleges that ERC, "by including the notices required by 15 U.S.C. § 1692g in two separate communications, which were about a month apart would confuse the least sophisticated consumer by stating that he or she had two separate thirty-day periods to make a dispute on the debt, when in fact he or she only had one thirty-day period to do so." *Id.* at ¶ 19. Plaintiff further contends that "[m]isleading a consumer into believing that he or she has greater rights than the law actually provides violates section 1692e." *Id.* at ¶ 21. Although these legal assertions are restated in various ways in the Amended Complaint, they form the crux of ERC's alleged violation of section 1692e and subsection 1692e (10) of the FDCPA.

**B. Section 1692g of the FDCPA requires collectors to provide a 30-day validation period and to give notice to consumers of those rights – the Amended Complaint includes no allegations that ERC failed to comply with these requirements.**

---

[1] Schwartz did not file the referenced letters as exhibits to either the initial or amended complaint, however, because the letters form the basis of her claims and are thus incorporated by reference into the complaint, ERC is filing them herewith for the Court's reference as Exhibit A and Exhibit B. *See Sira*, 380 F.3d at 67 (*citing Cortec Indus., Inc.*, 949 F.2d at 47).

4

The first two subsections of section 1692g of the FDCPA work in concert to provide certain protections to consumers and to apprise them of those rights. Subsection (a) requires debt collectors to notify consumers within five days of initiating contact with them of very specific items. It states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g (a) (2014).

While subsection (a) requires the collector to provide certain information to the consumer, subsection (b) provides substantive rights to consumers. It states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be

5

> inconsistent with the disclosure of the consumer's right to dispute the debt or
> request the name and address of the original creditor.

*Id.* at (b).  Accordingly, subsection (b) gives the consumer the right to dispute a debt and to seek verification of the information specified.  *Jacobsen v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). This right was given to consumers in "response to 'the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' " *Id.* (*quoting* S. Rep. No. 95-382, at 4 (1977) *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). As the "party in the better position to know the law," the FDCPA requires the collector to inform the consumer of these rights. *Id.* at 90.

A collector violates the FDCPA when it fails to inform a consumer of these rights, or "overshadows" its notice of them with contradictory language. *See Russell v. Equifax ARS*, 74 F.3d 30, 35 (2d Cir. 1996). The *Russell* court recognized that "there are many cunning ways to circumvent § 1692g under cover of technical compliance but purported compliance with the form of the statute should not be given sanction at the expense of the substance of the Act." *Id.* (*citing Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 485 (4th Cir. 1991)).

While subsection (b) requires collectors to respond in a certain way to written disputes during the initial thirty-day validation period, it does not limit the ability of a collector to so respond to untimely disputes. Subsection (b) is concerned only with the minimum period of protection provided by law, thirty days, during which a consumer can require a collector to verify the information specified. It is silent as to the ability of the collector to grant the consumer additional protection and allow extra time in which to dispute the debt.  Notably, here, Plaintiff does not allege ERC failed to provide the required notice, consistent with section 1692g (a), nor does she allege ERC failed to honor her substantive validation rights under 1692g (b).

6

### C.  Providing a consumer with additional time to dispute or seek validation of a debt is not false, deceptive, or misleading under the FDCPA.

Section 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e (2014). Similarly, subsection 1692e (10) prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* at (10).

Claims under these sections of the FDCPA are analyzed under the "least sophisticated consumer" standard. *Greco*, 412 F.3d at 363. The least sophisticated consumer is presumed to be reasonable, possess some knowledge about the world around him or her, and use care in reading collection notices. *Id.* This standard serves to shield naïve consumers, as well as protect collectors from FDCPA liability based on "bizarre or idiosyncratic interpretations" of collection letters. *Id.* An analysis of the letters at issue here under this standard makes it clear that ERC did not violate section 1692e or subsection 1692e (10) of the FDCPA.

Schwartz's theory of liability is not one of first impression in the Eastern District of New York: Judge Irizarry rejected this theory when posed by a consumer who received more than one letter referencing her ability to dispute a debt. *See Arend v. Total Recovery Servs., Inc.*, No. 05-cv-3064 (DLI)(JMA), 2006 WL 2064977 (E.D.N.Y. July 24, 2006). In *Arend*, sending a letter including the statement "[y]ou still have time to exercise your rights," after the initial thirty-day validation window was argued to be false and deceptive under section 1692e (10) because section 1692g requires collectors to give only one thirty-day window. *Id.* at *3. Judge Irizarry found that the FDCPA does not limit the amount of time that a collector can give a consumer to request validation to thirty days. The Court held it is "neither deceitful nor false, even to the least sophisticated consumer, for [the collector] to offer [the consumer] additional time to exercise his

SGR/13203335.3

right to obtain validation of the debt," and denied the consumer's motion for judgment on the pleadings. *Id.*

The Southern District of New York also rejected the theory presented here, even where the letters were sent just days apart. *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ.6500 LTS DFE, 2004 WL 594502 (S.D.N.Y. Mar. 25, 2004). In *Brenker*, two letters, each including language required by section 1692g, were sent to a consumer dated just five days apart. *Id.* at *1. The consumer argued the second letter was confusing to the least sophisticated debtor concerning his validation rights. *Id.* at *2. The court rejected the argument, finding "the two letters created no reasonable possibility of confusion in derogation of the debtor's rights. The initial letter accurately notified [the consumer] that she had thirty days from receipt of that letter in which to request validation." While the second letter was received during the initial validation period, the consumer's only possible confusion would be whether the thirty-day period had been extended by the second letter. The Court concluded the possible confusion complained of would not vitiate the validity of the original notice. The second letter, the court found, did nothing to suggest a diminution of that period and entered summary judgment for the collector. *Id.* at *2-3.

Courts in districts across the country have almost universally rejected similar theories of liability. *E.g. Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381 (S.D. Fla. 2014); *DiRosa v. N. Shore Agency, Inc.*, 56 F. Supp. 2d 1039 (N.D. Ill. 1999). In *DiRosa*, the court reasoned that section 1692e:

> lists sixteen specific false threats or tricks, or other unfair means than a debt collector may not use. None proscribes subsequent validation notices. [The consumer] can prevail only if the subsequent validation notices can be deemed to be a "false, deceptive, or misleading representation or means in connection with the collection of any debt." We conclude that they cannot.

*DiRosa*, 56 F. Supp. 2d at 1040 (*quoting* 15 U.S.C. § 1692e). There was no misrepresentation of the consumer's federal rights in the notices.  Rather, the court found they represented what the collector would do if it received a written dispute from the consumer. *Id.* In granting summary judgment for the collector on the claim, it noted that there are valid reasons for including subsequent validation notices, such as to "forestall arguments that § 1692g notice has not been given because, for one reason or another, the consumer had not received the initial communication." *Id.*

The Southern District of Indiana and Eastern District of Wisconsin concurred with *DiRosa*. In *Young v. G.L.A. Collection Co.*, No. 1:11-cv-489-WTL-MJD, 2011 WL 60166550 (S.D. Ind. Dec. 1, 2011) the Southern District of Indiana found that any confusion created by receiving a subsequent letter bearing the same validation notice could not adversely affect an unsophisticated consumer. No. 1:11-cv-489-WTL-MJD, 2011 WL 60166550 (S.D. Ind. Dec. 1, 2011). The court distinguished cases where liability was imposed based on subsequent letters received <u>during</u> the validation period demanding payment without reference to the validation period. *Id.* at *2. There, the court stated, a consumer may be misled to believe the validation period expired before the end of the statutorily prescribed period. That scenario is not alleged here. The court further distinguished simple confusion from legal confusion as contemplated by the FDCPA, finding the latter to require the potential to adversely affect the consumer. *Id.* On this basis, the court entered judgment on the pleadings in favor of the collector. *Id.* at *3.

Likewise the Eastern District of Wisconsin rejected the theory finding, as a matter of law, that a second notice, received after the expiration of the validation period, could not affect either the validity of the first notice or the consumer's behavior during the statutory period. *Paige v.*

9

*Waukesha Health Sys.*, No. 12-C-601, 2013 WL 3560944, at *8-9 (E.D. Wis. July 11, 2013). Accordingly, it dismissed the claim with prejudice.

Finally, the Southern District of Florida rejected the theory, noting that the sending of multiple notices to a consumer seemed "a prudent practice." *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1387. In *Gesten¸* the court rejected the argument that the receipt of dual letters, sent to two different addresses for the consumer, and received on different days, created confusion as to the boundaries of the validation period. *Id.* at 1386-87. Rather than being inconsistent with the first letter, the second letter granted the consumer additional time to dispute the debt and, instead of overshadowing the first letter, the second expanded and emphasized the rights explained therein, it reasoned. *Id.* The court granted summary judgment for the collector and noted that sending multiple validation notices calculated to be received by the consumer seemed prudent. *Id.* at 1387.

The reasoning employed by the *Paige* and *Young* courts comports with the materiality standard utilized by courts in this District. While the Second Circuit has not explicitly adopted a materiality standard, courts in the Southern and Eastern Districts of New York, have interpreted the Second Circuit's *Gabriele* opinion[2] as voicing support for such a standard, and subsequently applied it to claims. *See, e.g.*, *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013); *Castro v. Green Tree Serv. LLC*, 959 F. Supp. 2d 698, 711 (S.D.N.Y. 2013). This materiality standard requires the least sophisticated consumer to be misled by the statement as to the nature and legal status of the debt or for the statement to impede a consumer's ability to respond to or dispute collection. *Castro*, 959 F. Supp. 2d at 711.

Here, as in the extensive case law discussed above, there is nothing false, deceptive, or misleading about ERC's letters to Schwartz. ERC sent two letters to Schwartz, dated March 11,

---

[2] *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed. Appx. 89, 94 (2d Cir. 2012).

SGR/13203335.3

2014 and April 18, 2014. *See* Ex. A and Ex. B hereto. These two letters each contain the same validation notice—tracking the language of section 1692g (a)—and state that a validation request will be honored for thirty days following Schwartz's receipt of "this notice[.]" As the second letter was sent to Schwartz after the expiration of the initial thirty-day validation period, there is no possibility that Schwartz could have relied upon it in letting the statutory period pass. As in *Young*, discussed above, the second letter could not have caused any confusion adversely affecting Schwartz. The second letter was not sent until after the expiration of the initial thirty-day validation period.

Any imaginable confusion created by ERC's second letter is wholly immaterial. A statement must impede a consumer's ability to dispute a debt or respond to a request for payment in order to meet the standard of materiality employed by courts in the Second Circuit. ERC's letter used statutory language and granted Schwartz additional time in which to dispute the account and to request validation of the debt. This additional period of time commenced <u>after</u> expiration of the statutorily prescribed 30-day period.  Thus, there is no possibility Schwartz allowed the initial thirty-day period to expire in reliance on the second letter, rendering its effect immaterial on the exercise of those rights.

Rather than impede her ability to dispute the debt, ERC's second letter encouraged her to do so. As the FDCPA only requires collectors to take certain actions when receiving a notice of dispute after the thirty-day window passes, such as reporting the account as disputed if it subsequently reports the account to a consumer reporting agency,[3] a consumer may find it less advantageous to dispute a debt after allowing the initial thirty-day period to pass. But in offering her the same response for a second thirty-day period (i.e. interruption of collection activity until it provided verification), ERC granted Schwartz additional time to receive the full benefits of

---

[3] *See* 15 U.S.C.A. § 1692e (8) (2014).

SGR/13203335.3

submitting a dispute. *See Greco*, 412 F. 3d at 365-66 (rejecting a claim that a validation notice that "tracks the statute almost verbatim" was misleading where the effect of the lone addition "could only be additional encouragement to contest the debt").

Only a single judge has agreed with Schwartz's theory of liability premised on a second letter sent outside the initial validation window. *See Christopher v. RJM Acquisitions, LLC*, No. CV-13-2274-PHX-JAT, 2015 WL 437541 (D. Ariz. Feb. 3, 2015). In *Christopher*, the consumer argued the second letter violated the FDCPA by falsely representing her rights under the FDCPA. The court rejected the argument, finding the letter contained no representation of the consumer's legal rights. Senior Judge Teilborg, instead, posed an additional argument, *sua sponte*, and found that an unsophisticated debtor could be confused by receiving similar letters that use nearly identical language to inform the debtor that she has thirty days to dispute the debt. *Id.* at *8. The court raised the argument, provided its reasoning, and found a violation of the FDCPA all within a single paragraph of the opinion, presumably without the benefit of full briefing on the issue by the parties. It bases its holding on hypothetical questions that a consumer might ask after the second letter. These questions are:

> Did the debt collector already "assume this debt is valid," since I did not respond to the first letter? If so, then why did the debt collector send me a second notice, saying that I have another thirty days? Does this new letter restart the thirty days mentioned in the first letter, or does the second letter act as an extension of the thirty days afforded by the first letter? If I don't respond to this second letter, will the debt collector actually assume that I owe this money, or will it send me yet another letter?

*Id.*[4]

The questions posed by the *Christopher* court, and subsequently cited by Schwartz here, represent, at most, immaterial, simple confusion, of the kind rejected by the *Young* court. None of the questions raised by that court impede a consumer from responding to the letter or

---

[4] Plaintiff quotes this passage as well in her Amended Complaint at ¶ 20.

SGR/13203335.3

disputing the subject account. The only possible exception is the question of whether the second letter starts a new thirty-day period or extends the period provided by the initial letter. But this question is inapplicable here as the second letter was sent to Schwartz more than thirty days after the first letter.

Schwartz also incorrectly posits in the Amended Complaint that she would be left with no legal redress if she attempted to dispute the debt during the second validation period and ERC did not comply. Dkt. 17 at ¶¶ 24-25. That is not accurate. While she would not have a claim under section 1692g (b), she would have redress under section 1692e, the same section on which she relies in this action. Once ERC makes the representation that it will honor an untimely validation request during the second thirty-day period, its failure to do so could violate section 1692e as a false statement. Both sections of the FDCPA share the same statutory scheme for private rights of action under section 1692k. Accordingly, Schwartz's legal redress would be identical whether her rights arose under section 1692g or from ERC's representation.

As reflected by the foregoing survey of opinions, including the *Arend* opinion issued from this District, the theory asserted by Plaintiff here has been almost universally rejected because the second notice does not interfere with the initial 30-day validation period and because the collector's willingness to extend the period causes no harm to the consumer.  The theory should, likewise, be rejected here.

**D.  Plaintiff's theory contravenes the clear, stated policy and legislative intent of the FDCPA: encouraging greater protections for consumers.**

Courts must interpret the FDCPA in conjunction with its stated purpose. *See Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("[W]e may decline to interpret the FDCPA in a manner that 'would thwart the obvious purpose of the statute.' ") (*quoting Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998)). In passing the FDCPA, Congress found that there

13

was ample evidence of many debt collectors using "abusive, deceptive, and unfair" tactics in collecting debts and that existing laws were inadequate to redress injuries suffered by consumers. 15 U.S.C.A. § 1692 (2014). It enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* at (e). The FDCPA is not meant to be a ceiling of rights, but rather a floor, upon which others are encouraged to build additional protections for consumers. *See id.* ("It is the purpose of this subchapter to . . . promote consistent State action to protect consumers against debt collection abuses."); 15 U.S.C.A. § 1692n ("This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter . . . a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.").

Judge Dearie recently opined on the original purpose of the FDCPA and the unfortunate way that it has evolved in recent years. "Congress passed the FDCPA for the purpose of protecting consumers from abusive practices that were at that time commonplace by professional debt collectors," he noted. *Avila v. Riexinger & Assocs., LLC*, Nos. 13 CV 4349 (RJD)(LB), 14 CV 2740 (RJD)(LB), 2015 WL 1731542, at *912 (E.D.N.Y. Apr. 14, 2015). He continued, "[t]he statute, however, has evolved into something dramatically different than its original purpose would suggest. Enterprising and imaginative advocates have extended its protections to a wide variety of communications that, like the content in question here, do not on their face reflect obvious deception or dissembling." He found that many of the practices complained of could not reasonably confuse anyone and that the communications in the case before him violated neither

14

the "letter or spirit of the [FDCPA]." *Id.* Judge Dearie's observation applies here with equal measure.

Plaintiff's theory is premised on ERC giving notice to Plaintiff of the benefits of disputing her debt, which it is <u>required</u> to give, and on extending the time it will allow her to dispute and seek validation of the debt.  Plaintiff contends these actions, both of which are beneficial to her, nonetheless violate the FDCPA and are in some way false, deceptive, or misleading. Providing the consumer with additional notices merely increases the chances that the consumer will receive and read the notice, which the *Gesten* court noted seems a "prudent practice." *Gesten*, 57 F. Supp. 3d at 1387. Further, providing consumers with an additional opportunity to enjoy the benefits and protections provided by the FDCPA, only serves the express purpose of the FDCPA.

ERC has complied with both the form and substance of the FDCPA and exceeded the FDCPA's requirements of collectors. Schwartz's claimed confusion is based on a bizarre and idiosyncratic interpretation of ERC's letters, an interpretation which has been rejected by almost every court to consider it. This Court should, likewise, dismiss the Plaintiff's claim based on the inclusion of the 1692g notices in the two sequential letters.

### III.  Plaintiff's new and distinct claim concerning the reference to a website soliciting the payment of a convenience fee is barred by the FDCPA's limitations period, as a matter of law.

The limitations period for claims brought under the FDCPA is one year. 15 U.S.C.A. § 1692k (d). ("An action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs.")  "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6)

motion to dismiss for failure to state a claim[.]" Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989) (citing Gordon v. Nat. Youth Work All., 675 F.2d 356, 360 (D.C. Cir. 1982)).  As discussed below, the new claim asserted in the Amended Complaint accrued on the date ERC sent its first collection letter to Plaintiff.  Because Plaintiff affirmatively alleges in paragraph 10 of the Amended Complaint that the date of the letter was March 11, 2014, her claim is time-barred, as a matter of law, and may appropriately be disposed of on this motion.

### A. The new claim asserted in the Amended Complaint is premised on the reference to ERC's website in each of the letters sent to Plaintiff and on section 1692f (1).

In the Amended Complaint, Schwartz asserts a second, distinct claim for violation of the FDCPA.  The allegations of the Amended Complaint clearly establish the new claim is based on the receipt of the letters from ERC. Specifically, Plaintiff alleges the letters she received from ERC, dated March 11, 2014 and April 18, 2014, contained instructions to Plaintiff to "view statements, pay your balance, and manage your account online at www.payerc.com." Dkt. 17 at ¶ 32. She further alleges that ERC's website states that it charges a "convenience fee" and "that it charges an 'ACH convenience and handling fee of $7.50 for each ACH payment made.' " *Id.* at ¶¶ 33-34.

Plaintiff's reliance on receipt of the letters as the basis for her claim is bolstered by her class definition for this claim:

> all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter; (a) bearing the Defendant's letterhead in substantially the same form as the letters sent to the Plaintiff on or about March 11, 2014 and April 18, 2014, sent within one year prior to the date of the within complaint; . . . and (d) the Plaintiff asserts that the *letters solicited payments to be made via the website* which attempts to charge a "convenience fee" in violation of [the FDCPA].

*Id.* at ¶ 63 (emphasis added). Thus, both her claim, and her purported standing on behalf of the class, arose from her receipt of the cited letters.

16

Schwartz claims these allegations establish a violation of several provisions of the FDCPA including sections 1692e, 1692e (2)(A), 1692e (2)(B), 1692e (10), 1692f, and 1692f (1). However, each of these claims is premised on an alleged violation of subsection 1692f (1), which prohibits "the collection of any amount, including any interest, fee, charge, or expense incidental to the debt, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at ¶ 37. In support of this claim, Plaintiff alleges that "[s]uch a convenience fee was neither expressly authorized by an agreement between the creditor, and the Plaintiff, nor permitted by law." *Id.* at ¶ 38. And "[s]uch a convenience fee is neither expressly authorized by the agreement creating the debt, nor permitted by law." *Id.* at ¶40.

**B. Schwartz's allegations establish that, as a matter of law, the FDCPA's one year statute of limitations has run on the new claim asserted in the Amended Complaint.**

Schwartz's new claim, raised for the first time in the Amended Complaint, is barred by the FDCPA's one year limitations period because the claim accrued on March 11, 2014, when ERC sent its first letter to her containing the reference to the website.  Because the FDCPA provides consumers with a right of action irrespective of actual damages, a claim under the FDCPA accrues when the collector takes the complained of action. Accordingly, for claims based on communications to consumers, courts look to the date of the communication to establish the date of violation for purposes of applying the FDCPA's limitations period. *See Wright v. Zabarkes*, 347 Fed. Appx. 670, 671 (2d Cir. 2009) (looking to the date of the letters to establish the beginning of the running of the limitations period); *Mattson v. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) (holding that for limitations purposes the claim arose on the day the collector mailed the letter).

SGR/13203335.3

Here, Plaintiff specifically alleges in the Amended Complaint the date of the two letters received from ERC.  In paragraph 10 of the Amended Complaint, Plaintiff alleges "[o]n or about March 11, 2014, the Defendant sent the Plaintiff a collection letter […]" and alleges in paragraph 14 of the Amended Complaint that, "[o]n or about April 18, 2014, the Defendant sent the Plaintiff a further collection letter […]." The two letters identified in the Amended Complaint are attached hereto as Exhibits A and B, respectively.  *See* Note 1, *supra*. The Amended Complaint was not filed with the Court until July 9, 2015, more than one year after either of the two letters was sent to Plaintiff.

## C. The new claim in the Amended Complaint does not relate back to the date of the filing of the initial Complaint.

Plaintiff may argue the Amended Complaint relates back to the date of the filing of the initial Complaint.  It does not.  Rule 15, Federal Rules of Civil Procedure, provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrences set out—or attempted to be set out—in the original pleading." Rule 15 (c)(1)(B), Fed. R. Civ. P. "[C]ourts do not apply the relation-back doctrine to allow new and otherwise untimely claims for relief based on factual allegations not found in the original complaint. *Victori v. Accelerated Bureau of Collections of Ohio, Inc.*, No. 96-cv-0263E (SC), 1997 WL 9788, at *1 (W.D.N.Y. Jan. 2, 1997) (*citing Grace v. Rosenstock*, 169 F.R.D. 473, 480 (E.D.N.Y. 1996)).

Even where a consumer initially brings a claim under the FDCPA, additional claims arising thereunder will not relate back where they are based on separate acts or legal theories. *See, e.g.*, *Id.* at *2; *Wade v. Rosenthal, Stein & Assocs., LLC*, No. 11-C5672, 2012 WL 3764291, at *2 (E.D.N.Y Aug. 29, 2012); *Avila*, 2015 WL 1731542, at *9. In both *Victori* and *Wade*, a consumer sought to amend a complaint, limited to claims based on purportedly harassing phone

18

calls, to add claims based on one or more letters sent to the consumer. *Victori*, 1997 WL 9788, at *1; *Wade*, 2012 WL 3764291 at*1-2. In both cases, the court found the amendments were based on operative facts independent of those relied on in the original complaint and, thus, found them time-barred, despite the fact the new claims also arose under the FDCPA. *Victori*, 1997 WL 9788, at *2; *Wade*, 2012 WL 3764291 at *2.

Even more to the point here, <u>a consumer's FDCPA claim based on the same communications alleged in an initial complaint will not relate back where the new claim is based on a new legal theory, and on parts of the communications not addressed in the first complaint.</u> *Avila*, 2015 WL 1731542, at *9. In *Avila*, a consumer brought a putative class action for several FDCPA claims based on an initial letter sent to her by a collector. She alleged in the original complaint that the initial letter violated sections 1692e and 1692g of the FDCPA in various ways. *Id.* at *2. She later filed an amended complaint alleging, *inter alia*, the collector was attempting to collect an amount not permitted by law under section 1692f (1). *Id.* at *8. Judge Dearie found her claim under section 1692f (1) accrued at the time she was sent the collection letter giving her notice of the amount due. Because more than a year had elapsed between the collector sending her the letter and the filing of the amended complaint, the court engaged in an analysis under Rule 15 to determine if her claims related back to the filing of the original complaint.

The consumer argued she met the standard under Rule 15 for relation back <u>because the new claim was based on the same collection letter</u> as the claims in the original complaint. Thus, she argued, it arose out of the same transaction or occurrence. <u>The court rejected the argument.</u> In finding relation back was not appropriate, the court reasoned:

> "This is not a situation in which the new allegations merely 'amplify the facts alleged in the original pleading or set forth those facts with greater specificity.' " *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677, 2014 WL 815WL 815244, at *15 (S.D.N.Y. Mar. 3, 2014) (*quoting Oliner v. McBride's Indus., Inc.*,

19

> 106 F.R.D. 9, 12 (S.D.N.Y 1985)). Rather, [the consumer] has set forth an entirely new theory of liability, totally independent from the operative facts and claims set forth in her original complaint.

*Id.* Judge Dearie further noted that "in alleging a violation of 1692f, the amended complaint relies on a whole new set of facts relating to the rate of interest being charged—operative facts not at issue in the original complaint." *Id.*

Schwartz's claim regarding the reference in the letter to the website and the allegedly improper fee is barred by the statute of limitations because the claim is based on different operative facts and legal theories than the claim alleged in her original complaint.  In the initial Complaint (Dkt. 1), filed on March 23, 2015, Schwartz brought a single claim against ERC based on the two letters, namely, that the sending of a second letter containing a validation notice was false, deceptive, or misleading in violation of the FDCPA. Dkt. 1 at ¶¶ 29-31. In the initial Complaint, Schwartz purported to represent a single class:

> all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letters as the letters sent to the Plaintiff on or about April 18, 2014; and (a) the collection letters were sent to a consumer seeking payment of a personal debt; . . . and the Plaintiff asserts that the letters contained violations of 15 U.S.C.§§ 1692e and 1692e (10) for using a false representation or deceptive means to collect a on the alleged debt, and for misrepresenting that Plaintiff had an additional thirty-day dispute period, when in fact, she only had one thirty-day period to dispute the debt.

*Id.* at ¶46. No other claims are made in the initial Complaint. The initial Complaint does not contain any reference to the website or improper fees, nor does it reference a claim under section 1692f (1).  The initial Complaint asserts a straightforward, if faulty, claim under sections 1692e and 1692e (10) of the FDCPA based on section 1692g's statutory language.

The new claim raised in the Amended Complaint does not relate back because Schwartz has not merely amplified or clarified the facts in the initial Complaint. Rather, she has asserted a claim based on allegations not referenced, even in passing, in the initial Complaint. The

SGR/13203335.3

allegations supporting the new claim in the Amended Complaint, i.e., the reference in the letter to the website and the website's notice of a convenience fee, appear nowhere in the initial Complaint. In fact, the entirety of her claim in the initial Complaint is based on language appearing on the reverse side of the two letters. There is no mention in the initial Complaint of any information appearing on the front of the letters, where the website reference is located, other than the dates of the letters.

The new claim here is barred by the limitations period under the FDCPA, just as the Plaintiff's new claim was barred in *Avila*. In *Avila* and here, the Plaintiff initially asserted an FDCPA claim for alleged false or deceptive statements in a collection letter, and then amended to introduce a new and distinct claim under a different provision of the FDCPA.  As in *Avila*, Plaintiff's new claim is based on the same letters her original claim was based on, but is premised on facts distinct and independent from those relied upon in the initial Complaint.  In each case, the Amended Complaint transformed the case to add an entirely new claim under section 1692f (1). As in *Avila*, this claim does not relate back to the filing of the initial Complaint, and must be dismissed, with prejudice, as time-barred.

   **D. Plaintiff's new claim accrued when the March 11, 2014, letter was sent to Plaintiff; thus, the new claim is time-barred, regardless of whether it relates back under Rule 15, Fed.R.Civ.P.**

Even if Schwartz's new claim is deemed to relate back to the initial Complaint, it would still be time-barred under *Avila*. In *Avila*, the court found that the new section 1692f (1) claim arose at the time of the communication from which the claim became apparent to her. *Avila*, 2015 WL 1731542 at *8. There, the consumer claimed she was being charged an interest rate not permitted by law. The court found the claim arose when the collector first sent Plaintiff the letter with her "current balance" listed. Although, presumably, the interest charges complained of by

Plaintiff continued to accrue, the court concluded the date of the first letter must be used to determine when the statute of limitations began to run on the claim. *Id.*

Accordingly, any claim Schwartz had based on the reference to the payerc.com website in the letters she received from ERC was time-barred when the initial Complaint was filed. ERC sent Schwartz the two letters identified in her initial and Amended Complaint on March 11, 2014 and April 18, 2014. *See* Ex. A and Ex. B, hereto. Both letters include the reference to the payerc.com website. Dkt. 17 at ¶ 32. Thus, any claim Plaintiff might have concerning the alleged improper fee accrued when she was first directed to the website on March 11, 2014. Because the initial Complaint was filed on March 23, 2015, the one-year limitations period had already expired on the new claim, regardless of whether the Amended Complaint is deemed to relate back to the filing of the initial Complaint.

Furthermore, this is not a case where a consumer lacked the relevant facts to properly set forth her claim initially. Rather, the letters on which she bases the new claim were sent to her in March and April of 2014 and have been in her possession since at least that time. Notwithstanding her ability to raise these claims during the year following those communications, Schwartz waited until the eve of a pre-motion conference with this Court on a motion to dismiss the original complaint to assert the new claim.

### IV. Conclusion

The Amended Complaint asserts two claims for violation of the FDCPA. As to the first claim, the inclusion of a 1692g notice in a second letter to a consumer does not state a violation of the FDCPA and must be dismissed, as a matter of law. As to the second claim, Plaintiff's rights, if any, accrued when ERC sent her the letter dated March 11, 2014. The second claim is thus time-barred, regardless of whether the claim is deemed to relate back to the date of the filing

of the initial Complaint, on March 23, 2015.  Accordingly, the Amended Complaint should be dismissed, with prejudice.

Respectfully submitted,

*/s/ Scott S. Gallagh*er
Scott S. Gallagher
Smith, Gambrell & Russell, LLP
Address:  Bank of America Tower
    50 North Laura Street, Suite 2600
    Jacksonville, Florida 32202
Telephone: (904) 598-6111
Facsimile:  (904) 598-6211
Email:  sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*
and

John McCarthy
Smith, Gambrell & Russell, LLP
Address:   1301 Avenue of the Americas
    21st Floor
    New York, NY 10019
Telephone: (212) 907-9700
Facsimile: (212) 907-9800
Email: jmccarthy@sgrlaw.co

Counsel for Defendant

23

SGR/13203335.3



# Enhanced Recovery Company, LLC

March 11, 2014

**Creditor:** Barclays Bank Delaware
**Product:** USAIRWAYSMASTERCARD
**Account Number:** XXXXXXXXXXXX2340
**Amount of Debt:** $7,534.04
**Reference Number:** 92232051

## PAYMENT OPTIONS

BLIMIE SCHWARTZ

We recognize that you may have gone through some financial difficulty and have been unable to resolve your account. We would like to offer you a few flexible options to satisfy your account.

Option 1: Pay your current balance of $7,534.04 in 2 monthly payments of $3,767.02.
Option 2: Pay your current balance of $7,534.04 in 4 monthly payments of $1,883.51.
Option 3: Your account may be eligible for a similar payment arrangement as above. Please contact one of our representatives to take advantage of this option.

 View statements, pay your balance, and manage your account online at www.payerc.com

 Telephone: (800) 631-6702 Toll Free. All calls are recorded and may be monitored for training purposes.

 Send correspondence to: Enhanced Recovery Company, LLC, 8014 Bayberry Rd., Jacksonville, FL 32256-7412

 Office Hours (Eastern Time): Mon - Thur, 8:00 am - 11:00 pm; Fri: 8:00 am - 10:00 pm; Sat: 8:00 am - 8:00 pm

PAP-1003-B-0

**This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for that purpose.
NOTICE - SEE REVERSE SIDE FOR IMPORTANT NOTICES AND CONSUMER RIGHTS**



---

Please do not send correspondence to this address.

P.O. BOX 1259, Dept 98696
Oaks, PA 19456



March 11, 2014

| IF PAYING BY CREDIT OR DEBIT CARD, FILL OUT BELOW OR IF PAYING BY CHECK OR MONEY ORDER PLEASE REMIT TO ADDRESS BELOW. | | |
|---|---|---|
| VISA  MasterCard  AMERICAN EXPRESS | | BILLING ZIP |
| CARD NUMBER | | SECURITY CODE |
| SIGNATURE | | EXP. DATE |

| REFERENCE NUMBER | AMOUNT OF DEBT | AMOUNT PAID |
|---|---|---|
| 92232051 | $7,534.04 | $ |

98690 - 493

98690-20105-PAY_04_120-BAR1S-493

BLIMIE SCHWARTZ
1665 53RD ST
BROOKLYN NY 11204-1421

Enhanced Recovery Company, LLC
P.O. Box 23870
Jacksonville, FL 32241-3870



1 of 1

# EXHIBIT A

1. The amount of the claimed debt is the amount stated in the letter on the reverse side of this notice.

2. The name of the creditor to whom the debt is owed is in the letter on the reverse side of this notice.

3. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

4. If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

5. Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the letter on the reverse side of this notice.

**Federal Notice:**
This is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

**Tennessee Residents:**
This Collection Agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**Minnesota Residents:**
This Collection Agency is licensed by the Minnesota Department of Commerce.

**New York State Residents:**
New York City Department of Consumer Affairs License Number: 1394588.

**North Carolina Residents:**
North Carolina Department of Insurance Permit Number: 103967.

**Utah Residents:**
As required by Utah Law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

For additional information please contact the following:
Enhanced Recovery Company, LLC
8014 Bayberry Road
Jacksonville, FL 32256

**Colorado Residents:**
For information about the Colorado Fair Debt Collection Practices Act, see www.coloradoattorneygeneral.gov/ca or any successor web address.

A consumer has the right to request in writing that a Debt Collector or Collection Agency cease further communication with the consumer. A written request to cease communication will not prohibit the Debt Collector or Collection Agency from taking any other action authorized by law to collect the debt.
Local address:
13111 E. Briarwood Ave. #340
Centennial, CO 80012
(303) 309-3839

**California Residents:**
1. The State Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 AM or after 9 PM. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at: 1-877-FTC-HELP or www.ftc.gov.

2. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Massachusetts Residents:**
You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the debt collector. If you wish to discuss this matter, please call us direct, between the hours of 8 AM and 5 PM EST, at the telephone number listed on the front of this notice. Local Address: 49 Winter Street, Weymouth, MA 02118.

----------------------------------------

We at Enhanced Recovery Company, LLC specialize in assisting persons in different financial situations. If additional assistance is needed, please contact us or visit our website.



# Enhanced Recovery Company, LLC

April 18, 2014

**Creditor:** Barclays Bank Delaware
**Product:** USAIRWAYSMASTERCARD
**Account Number:** XXXXXXXXXXXX2340
**Amount of Debt:** $7,534.04
**Reference Number:** 92232051

### PAYMENT OPTIONS

BLIMIE SCHWARTZ

We recognize that you may have gone through some financial difficulty and have been unable to resolve your account. We would like to offer you a few flexible options to satisfy your account.

Option 1: Pay your current balance of $7,534.04 in 2 monthly payments of $3,767.02.
Option 2: Pay your current balance of $7,534.04 in 4 monthly payments of $1,883.51.
Option 3: Your account may be eligible for a similar payment arrangement as above. Please contact one of our representatives to take advantage of this option.

 View statements, pay your balance, and manage your account online at www.payerc.com

 Telephone: (800) 631-6702 Toll Free. All calls are recorded and may be monitored for training purposes.

 Send correspondence to: Enhanced Recovery Company, LLC, P.O. Box 57610, Jacksonville, FL 32241

 Office Hours (Eastern Time): Mon - Thur, 8:00 am - 11:00 pm; Fri: 8:00 am - 10:00 pm; Sat: 8:00 am - 8:00 pm

PAP-1003-C-0

**This communication is from a debt collector and is an attempt to collect a debt.**
**Any information obtained will be used for that purpose.**
**NOTICE - SEE REVERSE SIDE FOR IMPORTANT NOTICES AND CONSUMER RIGHTS**



---

Please do not send correspondence to this address.

P.O. BOX 1259, Dept 98696
Oaks, PA 19456



IF PAYING BY CREDIT OR DEBIT CARD, FILL OUT BELOW
OR IF PAYING BY CHECK OR MONEY ORDER PLEASE REMIT TO ADDRESS BELOW.

| | | BILLING ZIP |
| --- | --- | --- |
| VISA   MasterCard   AMERICAN EXPRESS | | |
| CARD NUMBER | | SECURITY CODE |
| SIGNATURE | | EXP. DATE |

April 18, 2014

| REFERENCE NUMBER | AMOUNT OF DEBT | AMOUNT PAID |
| --- | --- | --- |
| 92232051 | $7,534.04 | $ |

98690 - 30953

BLIMIE SCHWARTZ
1665 53RD ST
BROOKLYN NY 11204-1421

Enhanced Recovery Company, LLC
P.O. Box 23870
Jacksonville, FL 32241-3870



98690-20105-PAY_04_120-BAR1S-30953



1 of 1

# EXHIBIT B

**Federal Validation Notice:**
Pursuant to 15 U.S.C./1692g(a), take notice that:

1. The amount of the claimed debt is the amount stated in the letter on the reverse side of this notice.

2. The name of the creditor to whom the debt is owed is in the letter on the reverse side of this notice.

3. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

4. If you notify our office below in writing within (30) days of your receipt of this notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

5. Upon your written request to this office within thirty (30) days of your receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed in the letter on the reverse side of this notice.

**Federal Notice:**
This is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

**Tennessee Residents:**
This Collection Agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

**Minnesota Residents:**
This Collection Agency is licensed by the Minnesota Department of Commerce.

**New York State Residents:**
New York City Department of Consumer Affairs License Number: 1394588.

**North Carolina Residents:**
North Carolina Department of Insurance Permit Number: 103967.

**Utah Residents:**
As required by Utah Law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**For additional information please contact the following:**
Enhanced Recovery Company, LLC
8014 Bayberry Road
Jacksonville, FL 32256

**Colorado Residents:**
For information about the Colorado Fair Debt Collection Practices Act, see www.coloradoattorneygeneral.gov/ca or any successor web address.

A consumer has the right to request in writing that a Debt Collector or Collection Agency cease further communication with the consumer. A written request to cease communication will not prohibit the Debt Collector or Collection Agency from taking any other action authorized by law to collect the debt.
Local address:
13111 E. Briarwood Ave. #340
Centennial, CO 80012
(303) 309-3839

**California Residents:**
1. The State Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 AM or after 9 PM. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at: 1-877-FTC-HELP or www.ftc.gov.

2. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Massachusetts Residents:**
You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the debt collector. If you wish to discuss this matter, please call us direct, between the hours of 8 AM and 5 PM EST, at the telephone number listed on the front of this notice. Local Address: 49 Winter Street, Weymouth, MA 02118.

---

We at Enhanced Recovery Company, LLC specialize in assisting persons in different financial situations. If additional assistance is needed, please contact us or visit our website.