UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLIMIE SCHWARTZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ENHANCED RECOVERY COMPANY, LLC<br><br>Defendant. | Civil Action No. 1:15-cv-01518-CBA-SMG |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION MEMORANDUM**

Defendant, Enhanced Recovery Company, LLC ("ERC") submits this reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opposition") submitted by Plaintiff, Blimie Schwartz ("Schwartz" or "Plaintiff").

**I.      Introduction**

In the Opposition, Plaintiff: (1) relies on case law which is largely factually and legally irrelevant to the 1692e claim she seeks to support because those cases address violations of the FDCPA not alleged here; (2) relies on case law concerning the application of the relation back doctrine which is neither factually nor procedurally analogous to this case; and (3) clearly mischaracterizes the relative weights of legal authority on the issues before the Court.

**II.     The inclusion of the language "Federal Validation Notice" and "Pursuant to 15 U.S.C./ 1692g(a)" in ERC's letter is not a relevant distinction – there is nothing false or misleading about providing a consumer additional time to dispute a debt.**

Schwartz falsely claims that ERC's reliance upon six supporting cases is misplaced and that her two supporting cases represent the weight of authority. In fact, it is Plaintiff whose reliance

on the cited legal authority is misplaced, claiming support from cases which dismiss an argument not even made by ERC here. Accordingly, the Plaintiff's Opposition provides no valid basis to reject ERC's position.

> **A. Contrary to Plaintiff's assertions, decisions relied upon by ERC have addressed 1692g notices which contain language evidencing the notice was being provided pursuant to federal law.**

ERC cited six cases in its Memorandum in Support of Motion to Dismiss ("Initial Brief") which squarely addressed and rejected Plaintiff's legal theory. Schwartz claims each is distinguishable based on the specific language of ERC's letter. She points to the fact that ERC's letter included the terms "Federal Validation Notice" and "Pursuant to 15 U.S.C./ 1692g(a)" no less than ten times in the Opposition and claims this renders deceptive ERC's clear statements regarding what it would do if it received a dispute.

Plaintiff's contention regarding ERC's authority, however, is inaccurate as multiple decisions cited by ERC in its Initial Brief discussed notices which included language referring to the FDCPA in providing the notice. In *Gesten*[1] a decision unaddressed by the Opposition, the letter quoted by the court stated "[i]f, however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period that begins with your receipt of this letter, *the law requires us* to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you" and represented "that it is a 'notice' sent to [the consumer] 'pursuant to the requirements of Federal law,' and informs [the consumer] of the thirty-day period to request validation of the debt." *Id.* at 1384, 87. The letter in *Gesten* is not substantively distinguishable from ERC's letters.

This District also squarely addressed Plaintiff's contention that it is false, confusing, or misleading to represent that the validation notice concerns a Plaintiff's *rights* when it is the

---

[1] *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381 (S.D. Fla. 2014).

second such notice. In *Arend*,[2] Judge Irizarry noted, the consumer "contends that, if the [s]econd [l]etter was sent outside the validation period, the [collector] made false representations by stating '[y]ou still have time to exercise *your rights*' because Plaintiff did not have the right to dispute the debt." *Id.* at *3 (emphasis supplied). In context, this statement appeared in the letter as "[w]e sent you a first notice which included *your rights under the Fair Debt Collection Practices Act.* You still have time to *exercise your rights.*"[3] Judge Irizarry rejected this argument.

An additional case, not originally cited in the Initial Brief, also squarely addressed the claim that mere mention of the FDCPA converts an accurate validation notice into a false or deceptive statement when it is received a second time. *See Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504 (6th Cir. 2007). The language at issue in *Lamar*, as quoted by the court, reads:

> you have additional *rights under federal law* to request certain information from [the collector] within thirty (30) days. . . . The *federal Fair Debt Collection Practices Act requires that [the collector] provide you with the following information.* . . . If you notify [the collector] in writing within thirty (30) days of the receipt of this Notice that the debt or any portion thereof is disputed, [the collector] will obtain a verification of the debt and will mail a copy of that verification to you.

*Id.* at 506-07 (emphasis supplied). The consumer, having received this notice twice, alleged a violation of the FDCPA. The Sixth Circuit rejected the argument the validation notice was rendered deceptive or misleading by applying *the same* Second Circuit authority cited by Schwartz. It stated the collector's "notice cannot be reasonably read to have two or more different meanings." *Id.* at 512 (*citing Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)).

And like in *Avila*, the Sixth Circuit opined on the "cottage industry" that has developed around the FDCPA and the rise of professional plaintiffs. *Id.* at 514 (internal citations omitted).

---

[2] *Arend v. Total Recovery Servs., Inc.*, No. 05-cv-3064 (DLI)(JMA), 2006 WL 2064977 (E.D.N.Y. 2006).
[3] Although the full text of the letter is not discussed by the court, the letter was attached to the Complaint and before the court. *See* Complaint at 7, *Arend v. Total Recovery Servs., Inc.*, 2006 WL 2064977 (E.D.N.Y. 2006) (No. 05-cv-3064 (DLI)(JMA)) ECF No. 1.

3

The court stated that it would not impose liability based on "frivolous misinterpretations or nonsensical assertions of being led astray," and found the claim sanctionable. *Id.* at 514 n.5.

Each of the three foregoing courts analyzed notices that expressly referenced the FDCPA and the consumer's rights. Contrary to Plaintiff's assertion, in each of those cases, the courts squarely rejected the very argument advanced in the Opposition. Clearly, references to the FDCPA, when providing greater protections to consumers, does not render the notice false or deceptive.

### B. "It is neither deceitful nor false, even to the least sophisticated consumer, for Defendant to offer Plaintiff additional time to exercise [her] right to obtain validation of the debt."[4]

The Opposition cites several cases from around the country for the contention that providing a consumer with additional rights under the FDCPA does not prevent a collector from being found in violation of the FDCPA. This is not in dispute. Had ERC violated a provision of the FDCPA, an argument that it provided additional rights would not save it from liability, subject to the standards of this Court. What these cases do not address, however, is Plaintiff's contention that ERC violated the FDCPA simply *by* providing additional protections to consumers.

Plaintiff cites ten cases within footnote three of the Opposition, as well as the *Nero* decision[5] from this District, for the proposition that "[t]he majority and persuasive authority of courts have found the debt collectors in violation despite the debt collector's contention that by allowing the debtor to give an additional notification, it went above and beyond its duty under 15 U.S.C. § 1692g." Opposition at 6-7. Each of these cases is inapposite to the case at bar, as they all involve implied protections based on *noncompliance* with a statutory obligation.

---

[4] *Arend,* 2006 WL 2064977 at *3
[5] *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. 2009).

4

As discussed in Part II.B of the Initial Brief, the first two subsections of section 1692g of the FDCPA impose separate, but related, obligations on collectors. Subsection 1692g (b) sets forth how a collector *must* respond to a written consumer dispute within the initial thirty day validation window. *See* 15 U.S.C.A. § 1692g (b).[6] Subsection 1692g (a) imposes the duty to inform the consumer of statutorily prescribed information, the federal validation notice, and the failure to do so violates the FDCPA.[7]

Plaintiff's cases address whether a violation of subsection 1692g (a) can be excused, or somehow cured, through implied, greater protections offered under subsection 1692g (b), and rejected that argument. Here, ERC's argument is: by providing additional time to receive validation, and informing the consumer of this ability, ERC does not violate the FDCPA. Thus, Plaintiff's authority is inapt.

### C. Despite citing a plethora of cases in responding to the motion to dismiss the Letter Claim, only three cases cited by Plaintiff involve repeated validation notices.

Three cases cited by Plaintiff, including the *Christopher* decision quoted in the Complaint, involve repeated validation notices.[8] The two new decisions are respectively, not well reasoned and inapposite.

Judge Walls' decision in *Norton*[9] is as unreasoned and, thus, as unpersuasive, as the decision in *Christopher*.[10] In the single sentence addressing the issue, Judge Walls states: "The letters . . . on their face violate § 1692e, because they serve to deceive the least sophisticated debtor into

---

[6] *See Arend*, 2006 WL 2064977 at *3 ("Section 1692g of the FDCPA does not prohibit a debt collector from giving the consumer more than thirty days to exercise his right to obtain validation of the debt.").

[7] *See, e.g.*, *Nero*, 655 F. Supp. 2d at 206 ("The plain text of the FDCPA requires debt collectors to advise consumers of their rights in a prescribed manner, and [the collector] failed to do so.").

[8] The *Christopher* decision was discussed in Part II.C of ERC's Initial Brief and the reasons why that decision is unpersuasive will not be reiterated here.

[9] *Norton v. Wilshire Credit Corp.*, No. 95-3223 (WHW), 1997 WL 33835145 (D.N.J. July 5, 1997).

[10] In the Initial Brief, ERC stated that only Senior Judge Teilborg had agreed with Schwartz's theory of liability premised on a second letter sent outside the initial validation window. The Opposition has brought the *Norton* decision to ERC's attention. ERC was not aware of this decision when the initial brief was filed and now acknowledges this second decision as well, but is aware of no others.

believing that he may have an additional thirty days to dispute the debt." *Id.* at IV.B. The decision, like Plaintiff's Opposition, has no discussion as to how any such confusion would be material or how it affects the ability of a consumer to intelligently respond to the demand.

The second new decision cited by Plaintiff involves letters received *within* the initial validation period. *See Seplak v. IMBS, Inc.*, No. 98 C 5973, 1999 WL 104730 (N.D. Ill. Feb. 23, 1999). In *Seplak*, the court reasoned that a sentence in a second letter, sent only twenty-eight days after the first, which sought immediate payment to forestall further collection activity, could cause confusion as to the consumer's validation rights. When read in conjunction with the validation notices appearing in both letters, it found the statement would confuse the consumer as to whether she needed to act within the two days remaining or whether she had thirty more days. *Id.* at *3. The clear meaning of ERC's second letter, issued after the initial period expired, was not clouded by receipt during an ongoing initial validation period.

Finally, in discussing the specific issue of a second validation notice in the Opposition, Plaintiff inappropriately cites to the *Nero* decision for support. To the extent Plaintiff's reference to *Nero* is intended to suggest the case deals with repeated validation notices, it does not. Moreover, in the *Nero* opinion, Judge Matsumoto did not reject "defendants' argument" that the notice "clearly implies receiving written notification," as stated in the Opposition, the Court should note that the opinion was a default judgment and, therefore, the Court did not have the benefit of the Defendant's argument in the case.

Contrary to Plaintiff's assertions regarding the "majority and persuasive authority" on her side, she points to only two decisions finding a violation based on a second letter outside the initial validation period, neither of which discussed how any potential confusion could inhibit the

6

ability of a consumer to respond to the demand. In contrast, ERC has shown this Court seven decisions, including one from this District, that have found no such violation.

> **III.  There are no allegations in the original Complaint putting ERC on notice that matters extrinsic to its letter would be challenged in a later, untimely pleading.**

In the Amended Complaint, Plaintiff asserts a putative class claim based on a statement in ERC's letter directing Plaintiff to its website. Any such claim accrued when the communication was directed to her, as she claims it was by reference in the March 11, 2014 letter. As the original Complaint in this matter was filed on March 23, 2015, this claim is time-barred, regardless of whether it relates back to the filing date. In any event, to the extent the second letter revived the claim, it does not, in fact, relate back and would still be time-barred.

> **A. The new website claim was time-barred at the time of the original Complaint because the alleged communication was directed at Schwartz more than a year before its filing.**

ERC does not disagree with Plaintiff's argument that each discreet violation of the FDCPA is actionable for a period of one year from the time of the violation. If Plaintiff alleged that each letter on its face violated the FDCPA then she would have alleged discreet violations. This is not the case.

The website claim, arguably, involves three communications. The first communication is the letter dated March 11, 2014 addressed to Schwartz, which included the statement "view statements, pay your balance, and manage your account online at www.payerc.com." The second communication, the April 18 letter, contained an identical reference to ERC's website. These are the only two communications which the Amended Complaint affirmatively alleges were directed to and received by Plaintiff.

Theoretically, the third possible communication would be a demand by ERC directly to Plaintiff seeking an unauthorized fee. However, a careful reading of the allegations in the

Amended Complaint reveal that Plaintiff has not alleged any website communication was directed at her and, in particular, fails to affirmatively allege that the alleged "convenience fee" of $7.50 was demanded from her. Instead, she bases her claim on generally being referred to the website by ERC's letter, as is clearly reflected in the putative class definition, and then makes generic allegations concerning what can be found on the website.[11] Whether this pleading strategy is intended to increase the chances of class certification by tying the class to the form letter or, as ERC intends to prove, because no such fee was actually sought from Plaintiff on the website, the fact remains that the claim, as pled, is premised on the identical communication in the letters directing Plaintiff to ERC's website. Thus, the accrual date of the Plaintiff's claim is tied to the date of the letters containing the website reference.

Accordingly, Schwartz's claim, if any, accrued at the time the first letter directed her to the website. The receipt of the second letter making the same reference to the website does not restart the statute of limitations. As discussed in the Initial Brief, courts look to when the allegedly offending communication was directed at the consumer for limitations purposes.[12] It would make little sense that a consumer could, for example, look again at an old letter and unilaterally control the running of the statute of limitations. So too, when a communication is made generally on a collector's website, a consumer cannot restart the statute of limitations by revisiting the website or waiting until a later date than when she was directed to it. If so, a consumer could, for example, wait until more than a year after all collection activity had ceased

---

[11] While this distinction may seem trivial out of context, this distinction is very important. Plaintiff fails to allege that each account holder must establish an account before gaining access to an individualized web page corresponding to her account. Although some statements and information may be available to other account holders on the website, those statements are not necessarily available to this Plaintiff. Thus, the vague references in the Amended Complaint to what is on the website, without affirmatively alleging that those statements were specifically made to this Plaintiff, is important and should be considered in connection with this motion.

[12] *See, e.g.*, *Wright v. Zabarkes*, 347 Fed. Appx. 670, 671 (2d Cir. 2009).

to visit an offending communication to create a claim where any other claim would be time-barred. Such a result would be absurd.

> **B. The new claims do not relate back to the date of filing of the Complaint because they are based on separate operative facts than the claim in the initial pleading and no notice of the new claims was given.**

Plaintiff cites several cases for the proposition that Rule 15 provides for relation back of claims based on the same conduct set forth in the initial pleading. *See* Opposition at 12-17. But plaintiff has failed to point to a single case that is factually analogous to the pleadings and claims at issue here, as ERC has done. For example, Plaintiff cites cases finding relation back appropriate to determine *how* a company was improperly valued for an already pending securities fraud claim,[13] and found it appropriate for additional defamatory statements fully set forth in a *single* article already the subject of a libel suit.[14]

The facts in the cases relied upon by Plaintiff are too far removed from the context of the claims asserted by Plaintiff to effectively guide this Court. Although Plaintiff represents in the Opposition that *Contemporary Mission* involved a collection letter,[15] this is inaccurate. Rather *Contemporary Mission* involved a newspaper article which contained multiple allegedly defamatory statements. 665 F. Supp. at 256. The court found that the additional defamatory statements in the article related back under Rule 15, because the claims revolved around the same "transaction or occurrence" and the same "operative facts" made up the claims – namely, that the defendant published a defamatory article. *Id.* In so holding it distinguished a case where relation back was found inappropriate for *separate* publications of a libelous statement. *Id.* (*citing Jackson v. Ideal Publishing Co.*, 274 F. Supp. 318, 320 (E.D. Pa. 1967)).

---

[13] *Slayton v Am. Express Co,*, 460 F.3d 215, 228-29 (2d Cir. 2006).
[14] *Contemporary Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248, 256 (S.D.N.Y. 1987) *aff'd* 842 F.2d 612 (2d Cir. 1988).
[15] *See* Opposition at 12.

Whereas Plaintiff relies on factually dissimilar cases, ERC relies on three cases highly relevant to the application of the relation back doctrine. The *Wade*[16] and *Victori*[17] courts found the operative facts of claims related to phone communications to consumers did not sufficiently embrace new, letter-based claims to support relation back. The *Wade* court rejected the argument that each claim was based on the same conduct because they involved attempts to collect the same debt, finding rather that the new conduct differed in kind and in the manner it was alleged to have violated the FDCPA.[18]

Likewise, Judge Dearie refused to apply the doctrine to a class claim premised on section 1692f (1) of the FDCPA based on an oblique reference in a letter, which was the basis of the original complaint, to the allegedly unfair practice. *See Avila*, 2015 WL 1731542, at *8-9. He reasoned the amended complaint "set forth an entirely new theory of liability, totally independent from the operative facts and claims set forth in her original complaint." *Id.* at *9.

*Avila* is the most factually analogous case to the one before this Court. Plaintiff dismisses it and states Judge Dearie's "failure to follow binding second circuit [sic] authority as to the 'relation back doctrine' is currently under appeal." Opposition at 16 n.10. This is, again, inaccurate. *Avila* is currently on appeal, but neither Rule 15 nor "relation back" is mentioned in the appellant's brief.[19] The decision is well-reasoned and based on operative facts similar to those in this case and, accordingly, this Court should reach the same conclusion that relation back is inappropriate here.

---

[16] *Wade v. Rosenthal, Stein & Assoc., LLC*, No. CV-11-5672 (FB)(VVP), 2012 WL 3764291 (E.D.N.Y. Aug. 29, 2012).

[17] *Victori v. Accelerated Bureau of Collections of Ohio, Inc.*, No. 96-cv-0263E (SC), 1997 WL 9788 (W.D.N.Y. Jan. 2, 1997).

[18] *Wade*, 2012 WL 3764291 at *2. It is hard to see how Judge Dearie "misstated *Wade*," as stated in footnote 10 of the Opposition. *See Avila v. Riexinger & Assoc., LLC*, Nos. 13 cv-4349, 14 cv-2740 (RJD)(LB) 2015 WL 1731542, at *9 (E.D.N.Y. Apr. 14 2015) ("because the 'operative facts giving rise to the new claims are different' and the[] 'manner in which the letters are alleged to constitute violations of the FDCPA' differed from the manner set forth in the original complaint, there was no relation back").

[19] Brief of Appellants, *Avila v. Riexinger & Assoc., LLC*, No. 15-1584 (2d Cir. July 6, 2015) ECF No. 43.

Moreover, relation back may not lead to unfair results. *See Contemporary Mission*, 665 F. Supp. at 255 ("the principal inquiry is whether adequate notice has been given to the opposing party 'by the general fact situation alleged in the original pleading.'") (*quoting Rosenberg v. Martin*, 478 F. 2d 520, 526 (2d Cir. 1973)). There, the court noted "[n]o additional work on its part was required to prepare a defense against the added charges . . . . The documents, affidavits, and other elements of the case remained the same." *Id.* at 256.

Here, no relation back is permissible because the amendment would change the entire character and nature of the claims and proceedings. Although the Opposition cites a Seventh Circuit decision that cautions the judges in that Circuit to refrain from disposing of FDCPA claims based on innocuous letters on the pleadings,[20] the Second Circuit does not share that mandate. As discussed in part I.B of the Initial Brief, such claims are properly, and routinely, disposed of on the pleadings within the Second Circuit.

As the new claim involves matters that are not provable on the face of the pleadings, Plaintiff's amendment has changed the very nature of the defense of the action. The initial pleading set forth a single claim based on specific language contained in the April 18 letter attached to the Complaint.[21] Although the letter contained a reference to ERC's website, there was neither a single factual allegation in the Complaint regarding the website, nor any allegations generally referring to the alleged practice of collecting an unauthorized fee. In short, nothing in the original Complaint put ERC on notice of the new claim. Plaintiff's argument that the entire letter could be challenged is misplaced: there is nothing newly alleged to be deceptive or unfair about the letter itself.

---

[20] Opposition at 10.
[21] In its Initial Brief, ERC stated the letters were not attached to the Complaint. This was an oversight.

11

On the eve of a conference with this Court regarding dismissal, with prejudice, Plaintiff amended the Complaint to attempt to interject matters extrinsic to the letters attached to the Complaint, presumably in an attempt to avoid a dismissal of the entire lawsuit, even if ERC were to prevail on the argument concerning the 1692e claim. In addition, an entirely new putative class was added which includes not just persons who received multiple validation notices, as presented in the first complaint, but also those that received any letter bearing a reference to ERC's website. Accordingly, the entire nature of the proceedings was altered by Plaintiff's amendment, after such claims were time-barred. This cannot stand.

## IV.  Conclusion

Nothing in the FDCPA prohibits a collector from providing a consumer with additional time in which to dispute, and seek validation of, a debt. The mere fact a letter titles a validation notice as such, or provides a reference to where the same text appears in the United States Code, does not render deceptive a practice which provides a consumer with additional privileges and ensures the consumer is aware of the protections of the FDCPA.

Additionally, any claim Plaintiff may have had based on the website communication arose at the time that the communication was first directed at her. As this occurred more than a year before the initial Complaint here was filed, it is time-barred, regardless of whether Rule 15 would cause it to relate back to that filing. Accordingly, the Amended Complaint should be dismissed, in its entirety, with prejudice.

Respectfully submitted,

/s/ Scott S. Gallagher
Scott S. Gallagher
Smith, Gambrell & Russell, LLP
Address:  Bank of America Tower
          50 North Laura Street, Suite 2600
          Jacksonville, Florida 32202

Telephone: (904) 598-6111
Facsimile:  (904) 598-6211
Email:  sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*
and

John McCarthy
Smith, Gambrell & Russell, LLP
Address:   1301 Avenue of the Americas
           21st Floor
           New York, NY 10019
Telephone: (212) 907-9700
Facsimile: (212) 907-9800
Email: jmccarthy@sgrlaw.co

Counsel for Defendant